UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IDEXX DISTRIBUTION, INC., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|         v. | )   2:20-cv-00252-JDL |
| | ) |
| PET CARE VETERINARY CENTER, INC. | ) |
| | ) |
|    Defendant. | ) |

## JUDGMENT

On April 16, 2021, Plaintiff IDEXX Distribution, Inc. (IDEXX) filed a Motion for Entry of Default and Default Judgment due to the failure of Defendant Pet Care Veterinary Center, Inc. ("Pet Care") to file a timely answer to IDEXX's Complaint or to otherwise defend this action (ECF No. 12). The Clerk entered default on the docket (ECF No. 13), and the Motion for Default Judgment remains pending. On June 8, 2021, IDEXX moved to proceed on a paper record and without a hearing (ECF No. 15). For the reasons that follow, I grant both the Motion to Proceed on Paper Record and the Motion for Default Judgment.

### I. LEGAL STANDARD

"A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." *In re Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) (quoting *Franco* v. *Selective Ins. Co.,* 184 F.3d 4, 9 n.3 (1st Cir.1999)); *see Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 13 (1st Cir.1985) ("[T]here is no question that, default having been

1

entered, each of [the plaintiff's] allegations of fact must be taken as true and each of its [ ] claims must be considered established as a matter of law."). However, "liability is not deemed established simply because of the default," 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2688.1 (West, Apr. 2021 Update), and "[t]he Court must, therefore, be persuaded that the facts set forth in the complaint support the entry of judgment on one or more cognizable claims." *IDEXX Distribution, Inc. v. Daniel A. Lauridia DVM PC*, No. 2:19-cv-00412-LEW, 2020 WL 265194, at *1 (D. Me. Jan. 1, 2020).

Once liability is established, "any request for monetary relief through a default judgment must be supported by proof," unless such a request is for a "sum certain" that is "readily ascertainable from the complaint." *Id.* (citing Fed. R. Civ. P. 55(b)(2); *KPS & Assocs. Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003); *In re Home Rests.*, 285 F.3d 114).

Accordingly, I first must look to the facts alleged in the Complaint and, accepting them as true, determine whether those facts establish liability. Next, I must determine, based on the evidence provided by IDEXX, the proper amount of damages.

## II. FACTUAL BACKGROUND

IDEXX's one-count Complaint for breach of contract alleges that on May 1, 2017, IDEXX and Pet Care entered into an agreement for veterinary laboratory products and services (the "Agreement") (ECF No. 1). The Agreement required Pet Care to use IDEXX for at least 90% of its annual reference laboratory services and to purchase at least $95,055 annually ($7,921 monthly) of qualifying diagnostic products

and services from IDEXX from May 1, 2017 through April 30, 2023. In exchange, Pet Care received a substantial discount off of list price, an upfront award of 100,000 IDEXX "Points" with a value of one dollar apiece, and volume rebates. However, on or around February 2019, Pet Care stopped using IDEXX's reference laboratory services, and it has otherwise failed to purchase qualifying diagnostic products and services at the minimum purchase amount. Accordingly, IDEXX has suffered a loss of profits.

### III. DISCUSSION

#### A.   Liability

Under Maine law, which applies to the Agreement by its own terms, "in order to obtain relief for a breach of [] contract, the plaintiff must . . . demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088, 1091-92. The facts alleged by IDEXX in its Complaint establish both the material terms of the contract and that the contract was breached. Accordingly, Pet Care is liable for breach of contract.

#### B.   Damages

Because IDEXX has established Pet Care's liability, I must decide the question of damages. "Once liability is found, the factfinder is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." *Libertad v. Sanchez*, 215 F.3d 206, 208 (1st Cir. 2000) (emphasis and alterations omitted) (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)).

In support of its motion for default judgment, IDEXX submitted the declaration of Jamison Pelletier, who is the Senior Director of Finance at IDEXX Laboratories, Inc., of which IDEXX is an affiliate. Pelletier asserts that Pet Care's breach of the Agreement has resulted in lost profits in the amount of $282,018. He explains that Pet Care was $22,663 short of its annual purchase requirement in the second year of its contract with IDEXX, and adds that to the shortfall of $95,055 for years three through six of the Agreement, for a total shortfall of $402,883. [*Id.*] He then multiples the total shortfall amount by IDEXX's profit margin of 70%—which subtracts the costs to provide the products and services had they been purchased—for a resulting total loss of $282,018. [*Id.*]

The theory of recovery presented by Pelletier is that of a lost-volume seller. Black's Law Dictionary defines a lost-volume seller as:

> A seller of goods who, after a buyer has breached a sales contract, resells the goods to a different buyer who would have bought identical goods from the seller's inventory even if the original buyer had not breached. Such a seller is entitled to lost profits, rather than contract price less market price, as damages from the original buyer's breach.

*Lost-Volume Seller*, Black's Law Dictionary, (11th ed. 2019).

The lost-volume seller theory is supported by the Restatement (Second) of Contracts, which explains that:

> If the injured party could and would have entered into [a] subsequent contract [with another customer], even if the [initial] contract had not been broken, and could have had the benefit of both, he can be said to have "lost volume" and the subsequent transaction is not a substitute for the broken contract.

Restatement (Second) of Contracts, § 347, cmt. f.  In a lost-volume seller case, the injured party's damages are "based on the net profit that [it] has lost as a result of the broken contract." *Id.*

While many jurisdictions have adopted the lost-volume seller theory, there are some that have rejected it.  *See Kllm Transp. Servs., LLC v. JBS Carriers, Inc.*, No. 3:12-CV-116, 2015 WL 11005024, at *10-11 (S.D. Miss. Aug. 17, 2015) (collecting cases); *Rezro, Inc. v. Maximo Lanfranco*, No. 107-EDA-2015, 2016 WL 597205, at *1 (Pa. Super. Ct. Feb. 12, 2016) (noting that the state does not accept the lost-volume seller rule).  The Maine Law Court has recognized, but not adopted or rejected the lost-volume seller doctrine.  *See Schiavi Mobile Homes, Inc. v. Gironda*, 463 A.2d 722, 726 (Me. 1983) ("We leave for another day the question of the validity of lost-volume recovery.")  However, in a similar case in this District—which involved IDEXX as a plaintiff seeking a default judgment when a customer breached a similar contract— Judge Lance Walker concluded that the Law Court would likely adopt the lost-volume seller theory, "given its recognition in the Restatement and persuasive precedent existing in multiple jurisdictions."  *IDEXX v. Lauridia*, 2020 WL 265194, at *2.  I agree with and adopt Judge Walker's conclusion.

I therefore must finally determine whether the facts as alleged demonstrate a scenario in which a lost-volume recovery is appropriate.  While different jurisdictions describe the test for whether a seller qualifies as a lost-volume seller somewhat differently, they all require the same essential elements: First, that the seller had the capacity to perform both sales.  *Kllm Transp. Servs.*, 2015 WL 11005024, at *11.  Second, that it would have been profitable for the seller to perform both sales.  *Id.*

5

Third, that the seller would have made the second sale even if the first sale had not been repudiated. *Id.*

IDEXX satisfies this test. The Complaint alleges that IDEXX is "a leader in diagnostics and information technology solutions for animal health," ECF No. 1 ¶ 1, and it is clear from the Pelletier declaration that IDEXX provides veterinary diagnostic and laboratory products and services throughout the United States. Pelletier also notes in his declaration that fixed costs—such as the costs to establish laboratory testing facilities and employee supervisors—"do not vary as individual customer product and service volumes change." ECF No. 12-2 ¶ 13. This demonstrates that IDEXX has the capacity to perform profitable sales, and that the decision to make one sale does not hinge on whether IDEXX has performed any other sales.

A formal evidentiary hearing is not needed to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or to investigate any other matter. Fed. R. Civ. P. 55(b)(2). Accordingly, no "further inquiry" is required to establish the quantum of damages. *KPS & Assoc.,* 318 F.3d at 18. Pet Care has been properly defaulted, and IDEXX has established Pet Care's liability and the proper amount of damages.

## IV. CONCLUSION

For the foregoing reasons, both the Motion for Default Judgment (ECF No. 12) and the Motion to Proceed on Paper Record (ECF No. 15) are **GRANTED,** and IDEXX is **AWARDED** damages in the amount of $282,018 plus post-judgment interest pursuant to 28 U.S.C. § 1961.

SO ORDERED.

Dated: August 2, 2021

                                                        /s/ JON D. LEVY  
                                            **CHIEF U.S. DISTRICT JUDGE**